IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| In re: § | |
| § | **Chapter 7** |
| **RONALD MCELHANEY,** § | **Case No. 17-40839-EJC** |
| § | |
| Debtor. § | |

### EXPEDITED MOTION FOR LEAVE TO SELL PROPERTY FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. §§ 363(B) and (F) AND REQUEST TO DEFER FILING FEE

COMES NOW, Chapter 7 Trustee, Tiffany E. Caron ("Trustee"), through counsel, and files this Motion for Leave to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. §§ 363(b) and (f) and Bankruptcy Rules 6004(c) and 9014 with the Court as follows:

1. The Debtor filed a Voluntary Petition for relief under Chapter 7 of the United States Code on June 6, 2017.

2. Plaintiff, Tiffany E. Caron, is the duly appointed bankruptcy trustee in the above-captioned Chapter 7 case.

3. The Debtor (now deceased) is the joint owner of real estate located at 526 E. 46th Street, Savannah, GA 31405 (the "Property"). Legal Description is attached as *Exhibit A*.

4. The Trustee filed an Adversary Proceeding against the Joint Owner of the property, Patricia Emrich and an Order was entered permitting the Trustee to sell the property subject to a split of the net proceeds (See Order at Doc. No. 55).

5. The Trustee desires to sell the following property: 526 E. 46th St., Savannah, GA 31405, to Michael and Jennifer Krzmarzick ("Purchasers"), for $425,000.00, with

the sale to close on or around June 15, 2018, or by extension as agreed to by the parties. Purchaser has no relationship to the Debtor or to the Trustee. Purchase Agreement attached as *Exhibit B*.

6. Seller shall receive a $3,000.00 earnest money deposit to be held by Cora Bett Thomas Realty.

7. At the time of the bankruptcy filing, Debtor valued the property on Schedule A in the amount of $361,800.00.

8. The 2016 Chatham County Tax value was $361,800.00.

9. The Property was viewed and the value evaluated by Heather Booth with Cora Bett Thomas Realty. Based on the condition of the property, she recommended a list price of $525,000.00.

10. The Property was marketed for sale by Heather Booth of Cora Bett Thomas Realty for $525,000.00.

11. The Property has been listed for sale for almost six (6) months. The Property was under contract in January, 2018, for $484,900, however, the contract was immediately terminated after a home inspection. Although there has been a lot of interest in the property and many showings, the consensus from buyers has been that the deferred maintenance and repairs needed are more than most people are willing to take on.

12. There have been price reductions to $499,900, then to $489,900, then to $475,000. Most recently, a repair allowance of $15,000 was added to the listing, bringing the effective net asking price to $460,000.

13. The current sales contract is for $425,000.00.

14. Wells Fargo Home Mortgage ("Wells Fargo") has a first priority security interest in the Property with a current balance of approximately $338,000.00.

15. Wells Fargo also has a second lien on the property from a Home Equity Line of Credit ("HELOC") with a current balance of approximately $52,000.00.

16. The Trustee proposes to distribute the sale proceeds as follows:

a) Sales Commission of a maximum of six percent (6%) of the sales price, $25,500.00, shall be paid to and split between Chelsea Phillips of Keller Williams Coastal Area Partners (2.4%) and Heather Booth of Cora Bett Thomas Realty (3.6%) for real estate commission;

b) Debtor's share of Prorated Real Estate Taxes and Seller Paid Closing Costs (estimate: $2,500);

c) Wells Fargo shall be paid the full payoff amount of its first priority debt as of the closing date, or as extended by agreement of the parties;

d) Trustee is working with Wells Fargo on approval of a carve-out agreement which would provide for a reduced payoff to Wells Fargo on its second priority HELOC (the "Wells Fargo Carve-Out").

e) The remaining sales proceeds after the above items are paid ("Net Proceeds"), less the Wells Fargo Carve-Out, shall be paid 30% to Patricia Emrich pursuant to the Order (Doc. #55) and 70% to Tiffany E. Caron, Chapter 7 Trustee, for distribution by the Trustee pursuant to an Interim and/or Final Distribution by further Order of this Court after notice and opportunity for hearing.

Based on an estimated Wells Fargo Carve-Out of $40,000, the distribution at closing is estimated as follows (amounts to the Bankruptcy Estate would be reduced dollar for dollar to the extent the amount of the Wells Fargo Carve-Out is less than estimated):

| 526 E. 46th Street, Savannah, GA 31405 | | | Estimated Funds for Bankrutpcy Estate | |
|---|---|---|---|---|
| Gross Sales Price | $425,000.00 | | Trustee Commission | $24,500.00 |
| Less Buyer Closing Costs/Repairs | $   - | | Trustee Attorney's Fees | $ 3,520.00 |
| **Net Sales Price** | **$425,000.00** | | Attorney's Expenses | $   375.00 |
| RE Commission | $ 25,500.00 | | Pat Emrich Split per Adversary Order | $ 2,100.00 |
| **Total Before Payoffs** | **$399,500.00** | | Total Admin Costs | $30,495.00 |
| | | | | |
| Property Taxes and Seller Closing Costs (estimate) | $ 2,500.00 | | **Unsecured Creditor Distribution** | **$16,505.00** |
| 1st to Wells Fargo (estimate) | $338,000.00 | | | |
| Line of Credit with WF (estimate) | $ 52,000.00 | | | |
| Total Debts | $392,500.00 | | | |
| | | | | |
| Net Proceeds (before Wells Fargo Carve-Out) | $ 7,000.00 | | | |
| Wells Fargo Write-Off | $ 40,000.00 | | | |
| **Funds Available for Distribution in Bankruptcy** | **$ 47,000.00** | | | |

17. The Trustee believes this sale is for a fair price, is in the best interest of the estate and will provide the highest possible distribution to creditors.

18. The property shall be sold free and clear of all liens.

19. The Trustee requests an Order authorizing the sale of said property on the terms set forth herein.

20. The Trustee further requests that a hearing on this Motion be set on an expedited basis due to the proposed closing date of June 15, 2018.

21. The Trustee requests a waiver of the 14 day stay pursuant to Rule 4001.

22. The Trustee further requests deferral of the $181.00 filing fee unless or until there are liquid funds available to the estate from which to pay the fee.

WHEREFORE, the Trustee prays,

(1) for the entry of an order authorizing the sale with notice directing the debtor, creditors or other parties in interest to file any objections;

(2) that notice be sent to interested parties requiring a written objection to be filed on or before a specified time acceptable to the Court;

(3) that a hearing be set on an expedited basis due to the closing date which is scheduled prior to the next regularly scheduled hearing date;

(4) that the filing fee for this Motion be deferred; and

(5) for such other and further relief as may be just and appropriate.

This 25th day of May, 2018.

                                            Respectfully submitted,

                                            McCallar Law Firm

                                            /s/  Tiffany E. Caron_____
                                            Tiffany E. Caron
                                            Georgia Bar No. 745089
                                            *Attorney for Trustee*

McCallar Law Firm
P.O. Box 9026
Savannah, GA 31412
(912) 234-1215
Tiffany.caron@mccallarlawfirm.com

Orde
Loan Nc

# EXHIBIT A
# LEGAL DESCRIPTION

The following described property:

All those certain lots, tracts or parcels of land situate, lying and being in the City of Savannah, Chatham County, Georgia and being known and designated as Lots One Hundred Seventy-Nine (179) and One Hundred Eighty (180), Granger Ward, on that certain map or the Granger Tract prepared by J. Debruyn Kops, CE., Dated July 13, 1909, as corrected to January 3, 1910, and recorded in Book 10-O Page 292-293, in the Office of the Clerk of Superior Court, Chatham County, Georgia, to which said map is herein referenced for a more complete and particular description. This being the same property conveyed to Richard G. Fuller and Elizabeth S. Fuller by Warranty Deed Dated June 15, 1982 and recorded in Deed Book 118-R, Page 724, aforesaid records, and conveyed to Richard G. Fuller by Assent to Devise Dated December 11, 1996 and recorded in Deed Book 182-O age 508, aforesaid records.

Assessor's Parcel Numbe ███████

BOOK 391 S PAGE 177

**Exhibit B**

# PURCHASE AND SALE AGREEMENT

**Offer Date:** 05/07/2018


Georgia REALTORS®

**2018 Printing**

## A. KEY TERMS AND CONDITIONS

1. **Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.
   a. **Property Identification:** Address: 526 East 46th Street
      City Savannah, County Chatham County, Georgia, Zip Code 31405
      MLS Number: 183720    Tax Parcel I.D. Number: 2-0076-21-008
   b. **Legal Description:** The legal description of the Property is *[select one of the following below]*:
      ☑ (1) attached as an exhibit hereto;
      ☐ (2) Condominium (attach F33 Condominium Resale Purchase and Sale Exhibit)
      ☐ (3) the same as described in Deed Book _____, Page _____, et. seq., of the land records of the above county; **OR**
      ☐ (4) Land Lot(s) _____ of the _____ District, _____ Section/ GMD,
         Lot _____, Block _____, Unit _____, Phase/Section _____
         of _____ Subdivision/Development, according
         to the plat recorded in Plat Book _____, Page _____, et. seq., of the land records of the above county.

2. **Purchase Price of Property to be Paid by Buyer.**
   $ 425,000

3. **Closing Costs.**
   **Seller's Contribution at Closing:** $ 0

4. **Closing and Possession.**
   Closing Date shall be 06/15/2018 with possession of the Property transferred to Buyer
   ☑ at Closing **OR** ☐ _____ days after Closing at _____ o'clock ☐ AM ☐ PM (attach F140 Temporary Occupancy Agreement).

5. **Holder of Earnest Money ("Holder").** (If Holder is Closing Attorney, F84(A) must be attached as an exhibit hereto, and F84(B) must be signed by Closing Attorney.)
   Cora Bett Thomas Realty

6. **Closing Attorney/Law Firm.**
   Joel Gerber/Brannen, Searcy & Smith, LLP

7. **Earnest Money.** Earnest Money shall be paid by ☑ check ☐ cash or ☐ wire transfer of immediately available funds as follows:
   ☐ a. $ _____ as of the Offer Date.
   ☑ b. $ 3000 within 3 days from the Binding Agreement Date.
   ☐ c. _____.

8. **Inspection and Due Diligence.**
   a. **Due Diligence Period:** Property is being sold subject to a Due Diligence Period of 14 days from the Binding Agreement Date.
   b. **Option Payment for Due Diligence Period:** In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer:
      (1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus
      (2) shall pay Seller additional option money of $ _____ by ☐ check or ☐ wire transfer of immediately available funds either ☐ as of the Offer Date; **OR** ☐ within _____ days from the Binding Agreement Date. Any additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the purchase price at closing and shall not be refundable to Buyer unless the closing fails to occur due to the default of the Seller.

9. **Lead-Based Paint.** To the best of Seller's knowledge, the residential dwelling(s) on the Property (including any portion thereof or painted fixture therein) ☑ was (attach F54 Lead-Based Paint Exhibit) **OR** ☐ was not built prior to 1978.

10. **Brokerage Relationships in this Transaction.**
    a. **Selling Broker is** Keller Williams Coastal Area Partners **and is:**
       (1) ☑ representing Buyer as a client.
       (2) ☐ working with Buyer as a customer.
       (3) ☐ acting as a dual agent representing Buyer and Seller.
       (4) ☐ acting as a designated agent where:
          _____ has been assigned to exclusively represent Buyer.
    b. **Listing Broker is** Cora Bett Thomas Realty **and is:**
       (1) ☑ representing Seller as a client.
       (2) ☐ working with Seller as a customer.
       (3) ☐ acting as a dual agent representing Buyer and Seller.
       (4) ☐ acting as a designated agent where:
          _____ has been assigned to exclusively represent Seller.
    c. **Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:
       N/A

11. **Time Limit of Offer.** The Offer set forth herein expires at 3 o'clock p m. on the date 05/08/2018.

Buyer(s) Initials ___ *MK* 05/07/18 1:59PM EDT ___ *JK* 05/07/18 2:00PM EDT    Seller(s) Initials ___ *TCT* ___

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Chelsea Phillips IS INVOLVED AS A REAL ESTATE LICENSEE.  UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2018 by Georgia Association of REALTORS®, Inc.    F20, Purchase and Sale Agreement, Page 1 of 8, 05/01/18

dotloop signature verification: www.dotloop.com/my/verification/DL-344428436-4-1G3E
DigiSign Verified: D213D948-A31A-4ECE-BEA9-4D9EE80ACAD4

**B. CORRESPONDING PARAGRAPHS FOR SECTION A.**

1. **Purchase and Sale.**
   a. **Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by limited warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.
   b. **Examination:** Buyer may examine title and obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   c. **Title Insurance:** Buyer hereby directs any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy since such a policy affords Buyer greater coverage.

2. **Purchase Price to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at closing by wire transfer of immediately available funds, or such other form of payment acceptable to the closing attorney.

3. **Closing Costs.**
   a. **Seller's Contribution at Closing:** At closing, Seller shall make the referenced Seller's Monetary Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's Monetary Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's Monetary Contribution shall remain the property of the Seller. The Seller shall pay the fees and costs of the closing attorney: (1) to prepare and record title curative documents and (2) for Seller not attending the closing in person.
   b. **Items Paid by Buyer:** At closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; and (3) all other costs, fees and charges to close this transaction, except as otherwise provided herein.
   c. **Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing shall be prorated as of the date of closing. In the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party professional costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal for the year in which the Property is sold shall be deemed assigned to Buyer at closing.

4. **Closing and Possession.**
   a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (even in "all cash" transactions where Buyer is obtaining a mortgage loan) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension. If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.
   b. **Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property.

5. **Holder of Earnest Money.** The earnest money shall be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

6. **Closing Attorney/Law Firm.** Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. If Buyer's mortgage lender refuses to allow that closing attorney to close this transaction, Buyer shall select a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer.

dotloop signature verification: www.dotloop.com/my/verification/DL-344428436-4-1G3B
DigiSign Verified: D213D948-A31A-4ECE-BEA9-4D9EE80ACAD4

Case 17-40839-EJC    Doc#:75    Filed:05/25/18    Entered:05/25/18 16:18:16    Page:9 of 16

7. **Earnest Money:**
   a. **Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.
   b. **Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties at least ten (10) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall offer to disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day notice of the proposed disbursement to Buyer and Seller. If Seller accepts the offer and Holder issues a check to Seller which is deposited by Seller, it shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages are difficult to ascertain and are not a penalty. Nothing herein shall prevent the Seller from declining the tender of the earnest money by the Holder. In such event, Holder, after giving Buyer and Seller the required ten (10) day notice of the proposed disbursement, shall disburse the earnest money to Buyer.
   c. **Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.
   d. **Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages arising out of the performance by Holder of its duties; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

8. **Inspection and Due Diligence.**
   a. **Right to Inspect Property:** Upon prior notice to Seller, Buyer and/or Buyer's representatives shall have the right to enter the Property at Buyer's expense and at reasonable times (including immediately prior to closing) to inspect, examine, test, appraise and survey Property. Seller shall cause all utilities, systems and equipment to be on so that Buyer may complete all inspections. Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages relating to the exercise of these rights and shall promptly restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was in prior to such testing or evaluation. If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at **www.dea.gov**.
   b. **Duty to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer shall have the sole duty to become familiar with neighborhood conditions that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime and school, land use, government and transportation maps and plans. It shall be Buyer's sole duty to become familiar with neighborhood conditions of concern to Buyer. **If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.**
   c. **Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.
   d. **Property Sold "As-Is" Unless this Agreement is Subject to Due Diligence Period:**
      (1) **General:** Unless the Property is being sold subject to a Due Diligence Period referenced herein, the Property shall be sold "as-is" with all faults. Even if the Property is sold "as-is" Seller is required under Georgia law to disclose to the Buyer latent or hidden defects in the Property which Seller is aware and which could not have been discovered by the Buyer upon a reasonable inspection of the property. The inclusion of a Due Diligence Period herein shall: (a) during its term make this Agreement an option contract in which Buyer may decide to proceed or not proceed with the purchase of the Property for any or no reason; and (b) be an acknowledgement by Seller that Buyer has paid separate valuable consideration of $10 for the granting of the option.
      (2) **Purpose of Due Diligence Period:** During the Due Diligence Period, Buyer shall determine whether or not to exercise Buyer's option to proceed or not proceed with the purchase of the Property. If Buyer has concerns with the Property, Buyer may during the Due Diligence Period seek to negotiate an amendment to this Agreement to address such concerns.
      (3) **Notice of Decision Not To Proceed:** Buyer shall have elected to exercise Buyer's option to purchase the Property unless prior to the end of any Due Diligence Period, Buyer notifies Seller of Buyer's decision not to proceed by delivering to Seller a notice of termination of this Agreement. In the event Buyer does not terminate this Agreement prior to the end of the Due Diligence Period, then: (a) Buyer shall have accepted the Property "as-is" subject to the terms of this Agreement; and (b) Buyer shall no longer have any right to terminate this Agreement based upon the Due Diligence Period.
   e. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

dotloop signature verification: www.dotloop.com/my/verification/DL-344428436-4-1G3E
DigiSign Verified: D213D948-A31A-4ECE-BEA9-4D9EE80ACAD4

9. **Lead-Based Paint.** If any portion of a residential dwelling on the Property was built prior to 1978, the Lead-Based Paint Exhibit is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978.

10. **Brokerage Relationships in this Transaction.**
    a. **Agency Disclosure:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise. No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;
       **(1) No Agency Relationship:** Buyer and Seller acknowledge that, if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.
       **(2) Consent to Dual Agency:** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:
          i. **Dual Agency Disclosure:** *[Applicable only if Broker is acting as a dual agent in this transaction.]*
             (a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
             (b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;
             (c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.
             (d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.
          ii. **Designated Agency Disclosure:** If Broker in this transaction is acting as a designated agent, Buyer and Seller consent to the same and acknowledge that each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.
       **(3) Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.
    b. **Brokerage:** Seller has agreed to pay Listing Broker(s) a commission pursuant to a separate brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). The Listing Broker has agreed to share that commission with the Selling Broker. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective portions of the commissions out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the same from paying the remainder after the closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of the Broker(s) claim to a commission). The Brokers herein are signing this Agreement to reflect their role in this transaction and consent to act as Holder if either of them is named as such. This Agreement and any amendment thereto shall be enforceable even without the signature of any Broker referenced herein.
    c. **Disclaimer:** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to advise Buyer and Seller on any matter relating to the Property which could have been revealed through a survey, title search, Official Georgia Wood Infestation Report, inspection by a professional home inspector or construction expert, utility bill review, an appraisal, inspection by an environmental engineering inspector, consulting governmental officials or a review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax planner. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation.

11. **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

C. **OTHER TERMS AND CONDITIONS**

1. **Notices.**
   a. **Generally:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.
   b. **Delivery of Notice:** A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein). Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).

c. **When Broker Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party and notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein). Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

2. **Default.**
   a. **Rights of Buyer or Seller:** A party defaulting under this Agreement shall be liable for the default. The non-defaulting party may pursue any lawful remedy against the defaulting party.
   b. **Rights of Broker:** In the event a party defaults under this Agreement, the defaulting party shall pay as liquidated damages to every broker involved in this transaction with whom the defaulting party does not have a brokerage engagement agreement an amount equal to the share of the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, the written offer(s) of compensation to such broker and/or other written agreements establishing such broker's commission are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty.  In the event a Broker referenced herein either has a brokerage engagement  agreement or other written agreement for the payment of a real estate commission with a defaulting party, the Broker shall only have such remedies against the defaulting party as are provided for in such agreement.
   c. **Attorney's Fees:** In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and commission claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.

3. **Risk of Damage to Property.** Seller warrants that at the time of closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement) as on the Binding Agreement Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. Seller shall deliver Property clean and free of trash and debris at time of possession. Notwithstanding the above, if the Property is destroyed or substantially damaged prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above notice. If Buyer or Seller do not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Binding Agreement Date. The date of closing shall be extended until the earlier of one year from the original date of closing, or seven (7) days from the date that Property has been restored to substantially the same condition as on the Binding Agreement Date and a new certificate of occupancy (if required) is issued.

4. **Other Provisions.**
   a. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. This Agreement may not be assigned by Buyer except with the written approval of Seller which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement.
   b. **Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all representations of Seller regarding the Property; (4) the section on condemnation; and (5) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the closing.
   c. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.
   d. **Time of Essence:** Time is of the essence of this Agreement.
   e. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate. The letters "N.A." or "N/A", if used in this Agreement, shall mean "Not Applicable", except where the context would indicate otherwise.
   f. **Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party.
   g. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.
   h. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.
   i. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.

dotloop signature verification: www.dotloop.com/my/verification/DL-344428436-4-1G3E
DigiSign Verified: D213D948-A31A-4ECE-BEA9-4D9EE80ACAD4

j. **GAR Forms.** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

k. **No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions herein, amendments hereto, or termination hereof. However, if authorized in this Agreement, Broker shall have the right to accept notice on behalf of a party.

l. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of the same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.

5. **Beware of Cyber Fraud.** Fake e-mails attempting to get you to wire money to criminal computer hackers are increasingly common in real estate transactions. Under this scam, computer hackers fraudulently assume the online identity of the actual mortgage lender, closing attorney and/or real estate broker with whom you are working in the real estate transaction. Posing as a legitimate company, they then direct you to wire money to them. In many cases, the fake e-mail is sent from what appears to be the authentic web page of the legitimate company responsible for sending the wiring instructions. You should use great caution in wiring funds based solely on wiring instructions sent to you by e-mail. Independently verifying the wiring instructions with someone from the company sending them is the best way to prevent fraud. In particular, you should treat as highly suspect any follow up e-mails you receive from a mortgage lender, closing attorney and/or real estate broker directing you to wire funds to a revised account number. Never verify wiring instructions by calling a telephone number provided along with a second set of wiring instructions since you may end up receiving a fake verification from the computer hackers trying to steal your money. Independently look up the telephone number of the company who is supposed to be sending you the wiring instructions to make sure you have the right one.

6. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:
   - ☐ All Cash Sale Exhibit (F79) "_____"
   - ☐ Back-up Agreement Contingency Exhibit (F91) "_____"
   - ☐ Closing Attorney Acting as Holder of Earnest Money Exhibit (F84(A)) "_____"
   - ☐ Community Association Fees, Disclosures and Related Issues ("Disclosure") Exhibit (F55) "_____"
   - ☐ Condominium Resale Purchase and Sale Exhibit (F33) "_____"
   - ☐ Conventional Loan Contingency Exhibit (F64) "_____"
   - ☐ FHA Loan Contingency Exhibit (F63) "_____"
   - ☑ Lead-Based Paint Exhibit (F54) "C_____"
   - ☐ Lease Purchase and Sale Exhibit (F29) (to be used with F30) "_____"
   - ☐ Lease for Lease/Purchase Agreement (F30) (to be used with F29) "_____"
   - ☑ Legal Description Exhibit (F147) "A_____"
   - ☐ Loan Assumption Exhibit (F61) "_____"
   - ☑ Sale or Lease of Buyer's Property Contingency Exhibit (F90) "D_____"
   - ☐ Seller's Property Disclosure Statement Exhibit (F50, F51, F52 or F53) "_____"
   - ☐ Survey of Property as Exhibit "_____"
   - ☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F140) "_____"
   - ☐ USDA-RD Loan Contingency Exhibit (F78) "_____"
   - ☑ VA Loan Contingency Exhibit (F65) "B_____"
   - ☐ Other _____
   - ☐ Other _____
   - ☐ Other _____
   - ☐ Other _____

dotloop signature verification: www.dotloop.com/my/verification/DL-344428436-4-1G3E
DigiSign Verified: D213D948-A31A-4ECE-BEA9-4D9EE80ACAD4

Case 17-40839-EJC Doc #:75 Filed:05/25/18 Entered:05/25/18 16:18:16 Page:13 of 16

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

1.) All appliances present during time of offer are to remain with the property, including but not limited to: the dishwasher, refrigerator, washer, dryer, microwave oven, and range. Appliances in studio shall not convey.
2.) All lighting, fans, and fixtures present during the viewing date are to remain with the property.
3.) All window treatments & blinds present during the buyers viewing date are to remain with the property.
5.) Seller agrees to remove all personal items, storage items and debris from house, attic, and garage and home cleaned.
6.) Lawn maintenance to be completed prior to closing.
7.) Property shall convey "as is".
8.) Contract is subject to 3rd party approval.

*MFK* 05/07/18 9:20PM EDT   *JK* 05/07/18 9:21PM EDT

**Additional Special Stipulations** ☐ are or ☒ are not attached.

dotloop signature verification: www.dotloop.com/my/verification/DL-344428436-4-1G3E
DigiSign Verified: D213D948-A31A-4ECE-BEA9-4D9EE80ACAD4

| Buyer Acceptance and Contact Information | Seller Acceptance and Contact Information |
|---|---|
| *Michael F Krzmarzick* — dotloop verified 05/07/18 1:59PM EDT PTAG-PKSY-JWFE-GEBK | *Tiffany Caron, Trustee* |
| **1 Buyer's Signature** | **1 Seller's Signature** |
| Michael F Krzmarzick | _____  05-07-2018 |
| Print or Type Name    Date | Print or Type Name    Date |
| Buyer's Address for Receiving Notice | Seller's Address for Receiving Notice |
| Buyer's Phone Number: ☐ Cell ☐ Home ☐ Work | Seller's Phone Number: ☐ Cell ☐ Home ☐ Work |
| mike.krzmarzick@hotmail.com | |
| Buyer's E-mail Address | Seller's E-mail Address |
| *Jennifer Krzmarzick* — dotloop verified 05/07/18 2:00PM EDT HPWO-K7VY-MJCJ-CJYB | |
| **2 Buyer's Signature** | **2 Seller's Signature** |
| Jennifer Krzmarzick | |
| Print or Type Name    Date | Print or Type Name    Date |
| Buyer's Address for Receiving Notice | Seller's Address for Receiving Notice |
| Buyer's Phone Number: ☐ Cell ☐ Home ☐ Work | Seller's Phone Number: ☐ Cell ☐ Home ☐ Work |
| jen@kitchenvixenbakery.com | |
| Buyer's E-mail Address | Seller's E-mail Address |
| Additional Signature Page (F149) ☐ is ☒ is not attached. | Additional Signature Page (F149) ☐ is ☐ is not attached. |

| Selling Broker/Affiliated Licensee Contact Information | Listing Broker/Affiliated Licensee Contact Information |
|---|---|
| Keller Williams Coastal Area Partners | Cora Bett Thomas Realty |
| Selling Brokerage Firm | Listing Broker Firm |
| *Chelsea Phillips* — dotloop verified 05/07/18 2:20PM EDT R4TK-CYPW-52ZJ-5BDD | *Heather Booth*    05-07-2018 |
| **Broker/Affiliated Licensee Signature**    Date | **Broker/Affiliated Licensee Signature**    Date |
| Chelsea Phillips    349197 | Heather Booth    314371 |
| Print or Type Name    GA Real Estate License # | Print or Type Name    GA Real Estate License # |
| 912-509-0522 | 912-401-9401 |
| Licensee's Phone Number    Fax Number | Licensee's Phone Number    Fax Number |
| chelseasold@gmail.com | hbooth@corabettthomas.com |
| Licensee's E-mail Address | Licensee's Email Address |
| SAR | SAR |
| REALTOR® Membership | REALTOR® Membership |
| 124 Habersham Street | 13 E York Street |
| Broker's Address | Broker's Address |
| Savannah, GA 31401 | Savannah, GA 31401 |
| 912-232-8580 | 912-233-6000 |
| Broker's Phone Number    Fax Number | Broker's Phone Number    Fax Number |
| 850    H-47665 | 411    H-19241 |
| MLS Office Code    Brokerage Firm License Number | MLS Office Code    Brokerage Firm License Number |

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of __05/07/2018_____
and has been filled in by __Chelsea Phillips_____.

Copyright© 2018 by Georgia Association of REALTORS®, Inc.    F20, Purchase and Sale Agreement, Page 8 of 8, 05/01/18

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| In re: § | |
| § | Chapter 7 |
| RONALD MCELHANEY, § | Case No. 17-40839-EJC |
| § | |
| Debtor. § | |
| § | |

CERTIFICATE OF SERVICE

I, Tiffany E. Caron do hereby certify that I have this date served the foregoing Motion to Sell upon the following by depositing a copy of the same in the United States mail with proper postage affixed or via the Court's ECF system:

Patricia Emrich
526 E. 46th St.
Savannah, GA 31411

Office of the U. S. Trustee
Johnson Square Business Center
2 East Bryan Street, Ste 725
Savannah, GA 31401

Judson C. Hill
Gastin & Hill
P O Box 8012
Savannah, GA 31412

And

All other creditors and parties in interest automatically receiving notice through the Court's ECF Filing System

This 25th day of May, 2018.

McCallar Law Firm

/s/  Tiffany E. Caron
Tiffany E. Caron
Georgia Bar Number 745089
Attorney for Trustee

McCallar Law Firm
P.O. Box 9026
Savannah, GA 31412
(912) 234-1215